STEPHEN W. HOWE & another[1] *vs.* GEORGE TARVEZIAN
& others.[2]

No. 07-P-202.

Middlesex. December 10, 2007. - October 21, 2008.

Present: GELINAS, SMITH, & SIKORA, JJ.[3]

*Real Property,* Partition. *Probate Court,* Accounts, Partition proceedings. *Practice, Civil,* Attorney's fees, Costs.

In an abundance of fairness, this court considered the merits of a party's contentions in a civil action despite the fact that they fell short of legal argument required under Mass.R.A.P. 16(a)(4). [12-13]

A Probate and Family Court judge's fee awards to two commissioners in a partition proceeding did not constitute an abuse of discretion, where the judge, in using the approved lodestar method of calculation, took into account the experience and specialization of the commissioners, did not exceed the range of reasonable alternatives, and did not base his determination on arbitrary or idiosyncratic notions. [13-14]

In a civil dispute concerning the distribution of proceeds from the partition and sale of real property formerly owned by two brothers as tenants in common, the probate judge did not abuse his discretion in determining the fees and costs awarded to one of the brothers for services rendered by his attorney. [14-15]

The commissioners involved in a partition proceeding were entitled to apply for the allowance of attorney's fees for appellate services in a case that proceeded exclusively in the Probate and Family Court and the Appeals Court, based on an integrated reading of G. L. c. 241, § 22 (authorizing fees from partition proceedings), and G. L. c. 215, § 45 (permitting the award of costs and expenses following contested cases before the Probate and Family Court). [15-19]

COMPLAINT filed in the Middlesex Division of the Probate and Family Court Department on February 27, 2004.

The case was tried before *Robert W. Langlois,* J.

[1]John G. Dugan.

[2]Richard Tarvezian and Tarvezian Capital Corporation.

[3]Justice Gelinas participated in the deliberation on this case prior to his retirement.

*Albert Auburn* for Richard Tarvezian.

*George Tarvezian,* pro se.

*Maria L. Rockwell* for John G. Dugan.

*Stephen W. Howe,* pro se.

Sikora, J. This appeal is the fourth and perhaps final visit of the brothers George and Richard Tarvezian to this court in the prosecution of their long-running dispute over the partition and sale of a residential building in Watertown once owned by them as tenants in common (property). In the first chapter of litigation, Richard successfully petitioned the Probate and Family Court (Probate Court) for partition. A judge of that court appointed a commissioner, attorney Stephen W. Howe, to sell the property. George appealed. This court affirmed the final order of partition, a related order compelling George to transfer collected rents to the commissioner, and an order finding George in contempt for failure to do so. *Tarvezian* v. *Tarvezian,* 59 Mass. App. Ct. 1107 (2003).

In the second episode, George recorded mortgage instruments clouding title to the property. Howe brought a separate equity suit in the Probate Court resulting in a declaratory judgment invalidating the mortgages and in an order permanently enjoining George from interference with Howe's sale of the property. This court summarily affirmed. *Howe* v. *Tarvezian,* 63 Mass. App. Ct. 1103 (2005).

In the third chapter, George brought an action in the Land Court claiming title to the property by adverse possession and seeking to enjoin the sale. A judge of that court dismissed the action, found it frivolous within the meaning of G. L. c. 231, § 6F, and awarded Richard attorney's fees. The same judge later found George in contempt and ordered payment of additional attorney's fees. This court summarily affirmed the judgment of contempt and awarded appellate attorney's fees to Richard. *Tarvezian* v. *Tarvezian,* 65 Mass. App. Ct. 1112 (2006).

By close of 2005, Howe had collected all rent and sold the property. He reported net proceeds of $429,489.09, placed that money in escrow, and filed an account and a complaint for instructions in the Probate Court. George objected to the account. After a conference, a judge terminated the appointment of Howe

as commissioner and appointed attorney John G. Dugan as successor commissioner. The judge directed Dugan to conduct any further appropriate litigation (the complaint for instructions, the resolution of accounts, the inclusion of any residual grievances of the brothers), and scheduled a trial of remaining issues.

After the two-day trial, the judge allowed the accounts submitted by each commissioner, and entered judgments inter alia (1) awarding Howe the sums of $28,668.75 and $13,062.90 predominantly for fees and incidentally for expenses; and (2) awarding Dugan $12,705 as fees and expenses, apportioned to George in the amount of $6,710 and to Richard in the amount of $5,995. The judge added a number of adjustments to the distribution of the remaining proceeds between the brothers. These comprised the transfer of sums from George to Richard in the aggregate amount of $82,575.97 largely as reimbursement for Richard's payment of property taxes, his entitlement to interest, and his assumption of attorney's fees, costs, and other losses caused by George's litigation campaign.

Our appeal relates primarily to the entitlements to fees. George has not formally appealed from the judgments. Richard has appealed. He challenges (1) the award to each commissioner as excessive; and (2) the award to his attorney, Albert Auburn, as inadequate. Finally, in their appellees' briefs, the commissioners have requested awards of appellate fees and costs under authority of G. L. c. 241, § 22, and G. L. c. 215, § 45.

*Discussion.* 1. *Inadequate argument.* At the outset we must observe the insufficiency of Richard's analysis of the designated issues. While he has identified his objections to the probate judge's findings and rulings in a conclusory manner, he has not pursued them with coherent reasoning or authority.[4] Contentions lacking legal authority or reasoned explanation fall short of argument required under Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). The court need not consider them. See *Zora* v. *State Ethics Commn.*, 415 Mass. 640, 642 n.3 (1993); *Cameron* v. *Carelli*, 39 Mass. App. Ct. 81, 85-86 (1995); *Morgan* v. *Laboratory Corp. of America*, 65 Mass. App. Ct. 816, 821 n.6 (2006). In

---

[4]Richard makes general reference to only two cases in the course of his six-page argument.

an abundance of fairness we have examined the record and the commissioners' briefs for evaluation of the merits.

2. *The Probate Court awards to the commissioners.* General Laws c. 241, § 22, provides in pertinent part that the "reasonable expenses and charges of partition proceedings, including . . . the fees of counsel [and] of the commissioners, . . . shall be determined by the court, and in case of sale paid by the commissioners out of the proceeds . . . ." In this instance the judge assessed the value of the services of two experienced attorneys in the role of partition commissioners. The commissioners proposed an hourly rate of $275 to be multiplied by the reasonably necessary number of hours for their work. The judge accepted their proposals without change.

The computation of fees rests in the sound discretion of the trial judge. See *McGrath* v. *Mishara*, 386 Mass. 74, 87 (1982); *Berman* v. *Linnane*, 434 Mass. 301, 302-303 (2001). The Supreme Judicial Court has approved of the lodestar method for the calculation of reasonable amounts: the multiplication of a fair market hourly rate by the amount of reasonably spent time. *Stratos* v. *Department of Pub. Welfare*, 387 Mass. 312, 321-322 (1982). That computation should determine fee entitlements unless special reasons call for a departure. *Ibid.* "The lodestar approach has the advantage of producing generally consistent results from case to case." *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 325 (1993). The trial judge "is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services." *Id.* at 324.

The lodestar value may encompass a number of practical factors.[5] Here the judge could consider the experience and specialization of the commissioners (for Howe, fifty-two years of prac-

---

[5]These factors include (1) the length of the trial, (2) the difficulty of the legal and factual issues, (3) the degree of competence demonstrated by the attorney, (4) the nature of the case and issues, (5) the time and labor required, (6) the amount of money at stake, (7) the result achieved, (8) the experience, reputation, and ability of the attorney, (9) the usual price charged for similar services by other attorneys in the area, (10) the amount of awards in similar cases, and (11) the alternate demand for the attorney's services. See *Cummings* v. *National Shawmut Bank of Boston*, 284 Mass. 563, 569 (1933); *First Natl. Bank of Boston* v. *Brink*, 372 Mass. 257, 265-266 (1977); *Mulhern* v. *Roach*, 398 Mass. 18, 24 (1986); *Margolies* v. *Hopkins*, 401 Mass. 88, 93 (1987). See also Mass.R.Prof.C. 1.5(a), 426 Mass. 1315 (1998) (prohibiting

tice, thirty in probate work; for Dugan, thirty years of practice, twenty-five in probate matters); the substantial reputations of both in the probate law community; their testimony of the going rates for such work in the eastern Massachusetts market (in Howe's view, $275 per hour; in Dugan's, $225 to $375 per hour); the accomplishment of net sale proceeds of $429,489 by the aggregate work of the commissioners against various obstacles posed by George over six years; the itemization of services in their time sheets; and the directly observable quality of their written and court room work.

Upon these factors we cannot say that the judge's awards to the commissioners constituted an abuse of discretion. See *Mc-Grath* v. *Mishara, supra* at 87; *Berman* v. *Linnane, supra* at 302-303. The judge's determination did not go outside the range of reasonable alternatives, *Davis* v. *Boston Elevated Ry.*, 235 Mass. 482, 496 (1920); nor did it consist of arbitrary or idiosyncratic notions. See *Bucchiere* v. *New England Tel. & Tel. Co.*, 396 Mass. 639, 642 (1986); *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999).[6]

3. *The award to Attorney Auburn.* From George's share of the net proceeds the judge awarded to Richard fees and costs of $17,189.30 for the services of Auburn through early June of 2001, and $1,846.25 (at the rate of $175 per hour) for services rendered between June, 2001, and the trial of May, 2006. At the time of trial, Auburn submitted a lengthy time sheet asserting 172.33 hours of service for that interim of almost five years and requesting additional fees of $43,083.25 (172.33 hours at $250 per hour). The judge allowed only $1,846.25 for work done on fourteen dates during that span. He found "insufficient explanation/justification from counsel . . . particularly with regard to

the collection of an excessive fee and collecting these factors as criteria for measurement of excessiveness). The awarding judge may consider all or some of these criteria in any combination appropriate to the circumstances.

[6]The itemization of Howe's second segment of fees and costs ($13,062.90) for work performed after August 22, 2005, does not appear in the appellate record. Nonetheless we credit the trial judge's allowance of it upon the circumstantial support perceptible in the entire record. Richard has not included the itemization of the amount in the record nor launched a specific critique of it in his brief. The omissions deprive us of the means of review and create a waiver of the issue. See *Arch Med. Assocs., Inc.* v. *Bartlett Health Enterprises, Inc.*, 32 Mass. App. Ct. 404, 406 (1992); *Commonwealth* v. *Monteiro*, 71 Mass. App. Ct. 477, 478 n.2 (2008).

any particular entry or entries on his (Attorney Auburn's) billing statement, reflecting work done by him resulting from any alleged frivolous . . . action(s) of George Tarvezian . . . ."

Richard bears the burden of proving an abuse of discretion by the judge. *Keville* v. *McKeever*, 42 Mass. App. Ct. 140, 156 (1997). He has not carried it. The judge's selection of fourteen instances of useful service from Auburn's fifteen pages of itemization covering fifty-nine months shows deliberative examination of the request. The entries are not self-explanatory. They do not establish the value of the indicated work against the obstructive tactics of George, nor the necessity of the work as addition to the primary efforts of the commissioners. Richard's brief devotes only a conclusory paragraph to the issue. Again we cannot say that the judge with extensive knowledge of the case abused his discretion. See *Berman* v. *Linnane*, 434 Mass. at 302-303.

4. *The commissioners' claims for appellate fees and costs.* The Probate Court and the Land Court have concurrent jurisdiction of petitions for partition. The present dispute has proceeded exclusively in the Probate Court and the Appeals Court. The commissioners now request the award of fees and costs for their appellate work in the Appeals Court. They invoke the connected language of two statutes. The first, G. L. c. 241, § 22, specifically addresses the award of expenses and charges in partition proceedings. In pertinent part, it provides, "The reasonable expenses and charges of partition proceedings, including . . . *the fees of counsel* [and] of the commissioners," shall be determined by the court and distributed from the proceeds of a sale of the partitioned property (emphasis supplied). The penultimate sentence of c. 241, § 22, adds, "Costs may also be awarded under section forty-five of chapter two hundred and fifteen." In turn, the relevant words of G. L. c. 215, § 45, state, "In contested cases before a probate court or before the supreme judicial court on appeal, costs and expenses in the discretion of the court may be awarded to either party, to be paid by the other . . . as justice and equity may require. In any case . . . costs and expenses . . . may be awarded . . . [to a party's] counsel . . . ." The Supreme Judicial Court has construed the phrase "costs and expenses" to encompass attorney's fees. See *Conley* v. *Fenelon*, 266 Mass.

340, 343-344 (1929); *Boynton* v. *Tarbell,* 272 Mass. 142, 145-146 (1930). The Legislature last amended c. 215, § 45, in 1931. See St. 1931, c. 120, § 1. Its reference to the Supreme Judicial Court comprehended the entire appellate process available at that time. The reference necessarily includes now the appellate process of the later created Appeals Court. The question becomes whether these provisions entitle the commissioners to an award of fees for their legal work in the present appeal.[7]

The decisions addressing the availability of fees under G. L. c. 215, § 45, have been conservative. In *United Tool & Industrial Supply Co.* v. *Torrisi,* 359 Mass. 197, 199 (1971) (*United Tool*), the court excluded from fee awards cases brought under the general equity jurisdiction of the Probate Court, G. L. c. 215, § 6, so as to prevent parties to those suits from circumventing the general American rule that each party bear its own fees. The court saw "[n]o good reason" for a different rule for "an equity case not involving estate or trust matters begun in the Probate Court and another for the identical bill brought before the Superior Court." *Ibid.* In *Fuss* v. *Fuss* (*No. 1*), 372 Mass. 64, 71 (1977), a case involving the legitimacy of children, the court confirmed the confinement of an award of fees in Probate Court declaratory judgment actions to cases "relating to wills and estates" (citing the "estate or trust matters" phrase of *United Tool, supra*). In *G.E.B.* v. *S.R.W.,* 422 Mass. 158, 173 (1996) (a successful action brought by a child to establish paternity), the court held summarily that the child could not recover attorney's fees "[b]ecause § 45 is limited to wills and estates," with citation to the language of *United Tool, supra,* and *Fuss* v. *Fuss, supra.* Finally in *Gonzalez* v. *Pierce-Williams,* 68 Mass. App. Ct. 785, 789 (2007), an action for apportioning the proceeds of

---

[7]General Laws c. 241, § 22, treats as two distinct categories of compensation "the fees of counsel" and those "of the commissioners." In the time sheets covering the Probate Court work of the two commissioners, the functions of attorney and commissioner often blended indistinguishably as they attempted to ward off or to combat litigation by George, to accomplish the sale of the property, and to assemble accounts for presentation to the Probate Court. Apportionment between the two roles was not feasible. The entitlement in dispute in the current appellate phase of the case relates entirely to *legal* work by the commissioners: their defense of their compensation by the Probate Court judge by means of their briefs, compilation of supplemental records, and oral argument in this court.

a partition sale, this court adopted the language of the three previous cases and concluded that the fee shifting of "c. 215, § 45, is limited to wills and estates . . . [and] not applicable here."

The present case is distinguishable from all four of those decisions. It presents for the first time the claim that the court must read the two fee statutes in combination, not isolation.[8] The commissioners maintain that Richard's present appeal has put them to unnecessary additional work and expense. The record and the appellate briefs abundantly support that position. Under c. 241, § 22, they are entitled to appropriate fees. Section 22 authorizes fees from the trial court of the partition action, either the Land Court or the Probate Court, under the jurisdictional grant of G. L. c. 241, § 2, for partition proceedings. Section 22 does not address appellate fees. By reference it authorizes fees under c. 215, § 45, which does extend eligibility for fees to the appellate process.

For several reasons an integrated reading of the two statutes leads to the conclusion that commissioners and attorneys in partition proceedings may apply for allowance of attorney's fees for appellate services in cases from the Probate Court. A number of interpretative guide posts point toward that result. Courts should interpret as harmoniously as possible provisions related to the same subject matter and connected by cross-reference. See *Platt* v. *Commonwealth*, 256 Mass. 539, 542 (1926); *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 433 (1972). If possible, every expression should receive some effect. See *Commissioner of Corps. & Taxn.* v. *Chilton Club*, 318 Mass. 285, 288 (1945); *Negron* v. *Gordon*, 373 Mass. 199, 205 (1977). None should become ineffectual. See *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 189 (1969), and cases

---

[8]In *Gonzalez* v. *Pierce-Williams*, *supra* at 788-789, we examined the partition plaintiff's claim for fees separately: first under G. L. c. 241, § 22; and then under G. L. c. 215, § 45. We found that any deviation from strict beneficial apportionment under c. 241, § 22, would be unwarranted and inequitable in the circumstances. We then independently applied "the wills and estates" limitation of c. 215, § 45. For the reasons following, neither analysis fits the present circumstances in which (1) the equities support an adjustment to strict apportionment under c. 241, § 22, and (2) the application of the "wills and estates" restriction upon c. 215, § 45, would nullify the operation of c. 241, § 22.

cited. Usually a specific provision will prevail in application against a general one addressing the same subject. See *Clancy* v. *Wallace*, 288 Mass. 557, 564 (1934); *Reiter Oldsmobile, Inc.* v. *General Motors Corp.*, 378 Mass. 707, 711 (1979). Finally, the language of *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 19 (1989), suggests a canon for the application of fee shifting legislation. "The statutory provisions for a 'reasonable attorney's fee' would ring hollow if it did not necessarily include a fee for the appeal." *Ibid.*

In the present circumstances, the imposition of the "wills and estates" limitation of c. 215, § 45, would effectively nullify the authorization of appellate fees for partition commissioners conferred by c. 241, § 22. It would render that element of c. 241, § 22, and its cross-reference to c. 215, § 45, as ineffectual surplusage. In particular it would cause a general provision governing fees and costs in a matter originating in the Probate Court to negate the more specific provision for the entitlement of partition commissioners to fees for services. The Legislature enacted the present version of c. 241, § 22, in 1917 and cross-referenced the then existing version of c. 215, § 45. In 1931 it adopted the current language of c. 215, § 45, and left the cross-reference of c. 241, § 22, unchanged.[9] It could not rationally have intended to confer an entitlement in one statute and simultaneously to eliminate it by reference to a second statute.

The original purpose of the "wills and estates" language supports that conclusion. In *United Tool*, 359 Mass. at 199, the court sought to prevent "forum shopping" use of the Probate Court's general equity jurisdiction as a tactic for pursuit of fees in evasion of the general American rule. It used the phrase "estate or trust matters" as an example of narrower historically probate subject matter. It could have referred to multiple other traditionally probate concerns such as conservatorship, guardianship, divorce, and custody. Upon the authority of *United Tool* the subsequent three decisions appear to have adapted the phrase "estate or trust matters" to "wills and estates" and to have converted it from an illustrative phrase to a substantive rule. The use of the

---

[9]Statute 1931, c. 120, § 1. The Legislature is presumptively aware of related preexisting law. See *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950); *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 546 (1976).

shorthand expression has drifted away from the anchoring purpose of the first decision: to curb the manipulative use of the Probate Court's general equity power for the pursuit of fee shifting. That danger is absent from the express statutory allowance characterizing partition litigation.

Therefore the commissioners are entitled to apply for an award of reasonable appellate fees. They may do so in accordance with the procedure prescribed in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004). Within fourteen days of the date of the rescript, the commissioners shall serve and file their fee requests including verified and reasonably detailed itemization of their services and any supportive affidavit information and memoranda of law. Within fourteen days of service of those materials, Richard may serve and file opposition papers.

*Judgments affirmed.*