Neel, Stephen E., J.
Plaintiffs in the above consolidated shareholder actions seek attorneys fees and expenses in the amount of $4,940,000. After hearing, and review of the parties’ submissions, the Court addresses below their contentions with regard to (1) whether plaintiffs are entitled to any fees; (2) if so, the proper standard to be applied; and (3) the reasonableness of the amount requested; and awards attorneys fees and expenses accordingly.
BACKGROUND
Plaintiffs commenced this litigation on January 14, 2010, seeking injunctive relief relating to a proposed acquisition of defendant AMICAS, Inc. (Arnicas ) by Thoma Bravo, LLC (Thoma Bravo) for $5.35 per share, scheduled for a shareholder vote on February 19. Plaintiffs alleged, inter alia, that the proposed transaction significantly undervalued Amicas’s public shares, and that defendant Arnicas directors would receive personal financial benefits not shared by the common shareholders.
In early February, plaintiffs further alleged that defendants had concealed from Arnicas shareholders a competing bid by Merge Healthcare, Inc. (Merge) for $6.00 per share, a bid that soon rose to $6.05. Defendants responded that they were not required to disclose the existence of the Merge offer, in part because that offer, in their view, was not a “Superior Proposal” as defined by the Thoma Bravo acquisition agreement.
After negotiations failed to produce a resolution, the Court on February 18 enjoined defendants from conducting the scheduled February 19 shareholder vote on the Thoma Bravo proposal. In its Order of that date the Court found that Amicas’s Definitive Proxy Statement contained materially deficient disclosures concerning the Thoma Bravo proposal, and ordered that the shareholder meeting be adjourned pending further order of the Court.
Subsequently, after negotiations between Arnicas and Merge (principally concerning the firmness of Merge’s financing for the acquisition), Arnicas announced on March 5 that its Board had unanimously determined the Merge proposal to be a Superior Proposal. Arnicas also announced that it would terminate the Thoma Bravo merger agreement and enter into an agreement with Merge under which Merge would make a cash tender offer to Amicas’s shareholders at a price of $6.05 per share. That same day the Court dismissed plaintiffs’ claims as moot. Amicas’s shareholders subsequently approved the Merge proposal, which yielded a total increase in shareholder value, compared to the Thoma Bravo offer, of $26,000,000.
DISCUSSION
I. Plaintiffs’ Entitlement to Fees
A. Choice of Law
The parties dispute, at some length, whether Massachusetts or Delaware law applies to the Court’s analysis of plaintiffs’ fee petition. Having reviewed the law of both jurisdictions, the Court concludes that it will apply Massachusetts law, but notes that its conclusions herein would be the same were it to apply the law of Delaware.
B. Defendants’ Causation Objection
The Supreme Judicial Court has described the circumstances under which, in a case such as this, a court may award attorneys fees:
Where a party “has, at his or her own expense, been successful in creating, preserving or enlarging a fund in which other parties have a rightful share,” a court may order the payment of attorneys fees and expenses out of the fund as part of a damages award.
Coggins v. New England Patriots Football Club, Inc., 406 Mass. 666, 669 (1990) (quoting Pearson, v. Board of Health of Chicopee, 402 Mass. 797, 801 n.3 (1988). The allowance of fees is discretionary. Id.
Defendants rely on Coggins to support their contention that plaintiffs are not entitled to any fees in this case:
[P]laintiffs had nothing to do with “creating, preserving or enlarging” the difference in price between the Thoma Bravo merger proposal and the Merge tender offer. Plaintiffs cannot claim any credit for Merge’s initial $6.00 per share offer, its subsequent increase to $6.05, or its commitment to additional financial guarantees. Obviously Merge took those steps independently of the plaintiffs, and Merge did so because Merge had to present an offer sufficiently compelling for the AMICAS Board to deem it superior to the Thoma Bravo proposal. Importantly, AMICAS vigorously negotiated with Merge over the standards Merge needed to meet to show that its proposal was superior to Thoma Bravo’s — plaintiffs played no role in those negotiations. These facts sharply distinguish this case from the typical common fund case where the plaintiff has won damages ... on behalf of a class of shareholders . . .
Arnicas Opposition, at 15.
*570 In the Court’s view, defendants’ argument takes too narrow a view of causation as it applies in the present context, as when they argue that “the injunction obtained by plaintiffs did not cause and could not have caused AMICAS to declare the updated Merge proposal to be superior to the Thoma Bravo proposal." Id.., at 16. Rather, defendants argue, the injunction “only delayed the shareholder vote on the Thoma Bravo merger proposal pending additional disclosure by AMICAS concerning the Merge proposal.” Id.
What defendants overlook is the role that plaintiffs played in seeking and obtaining the preliminary injunction: had plaintiffs not been successful, the shareholder vote on the Thoma Bravo proposal would have gone forward on February 19. In light of the record presented by the parties, the shareholders would likely have adopted that proposal. Accordingly, what plaintiffs created, by their successful application for preliminary relief, was the opportunity for the alternate Merge proposal to be considered, negotiated, and accepted by the Arnicas board, which is exactly what happened.
The Court therefore finds that plaintiffs’ efforts in this litigation were a substantial contributing cause of the creation of a $26,000,000 fund for Arnicas shareholders, and merit an award of attorneys fees and expenses.
II. Standard for Awarding Fees
Plaintiffs argue that under either Massachusetts or Delaware law, the standard which the Court should apply is the “percentage of the fund.” By that measure, they argue, an award of $4,940,000 (19% of the $26,000,000 fund) is reasonable, and well within the spectrum of such awards in similar cases. See Plaintiffs Memorandum, at 15-18.[1]
Defendants argue that under Massachusetts’ lodestar method, which involves “multiplying the number of hours reasonably spent on the case [by] a reasonable hourly rate,” Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993), plaintiffs’ fee request is not reasonable because both the hours and the rates charged by plaintiffs’ counsel are inflated. Amicus Opposition, at 20. While plaintiffs concede that “in similar actions creating large financial benefits, courts often consider the hourly billings of plaintiffs’ counsel as a ‘backstop check’ on the percentage to be awarded,” Plaintiffs Memorandum at 19, they contend that their billings are both reasonable and consistent with their fee request.
In cases where the basis for a fee request is statutory, the Supreme Judicial Court has indicated that the “basic measure” of a reasonable attorneys fee award is the lodestar method, see Fontaine, 415 Mass. at 324. Where the fee request arises not from statute but from creation of a common fund, and Massachusetts appellate courts have not expressly authorized the use of the percentage method in such cases,[2] lodestar remains the appropriate standard.[3]
Under the lodestar method, factors to consider include (1) the nature of the case and the issues presented, (2) the time and labor required, (3) the amount of damages involved, (4) the result obtained, (5) the experience, reputation, and abiliiy of the attorneys, (6) the usual price charged for similar services by other attorneys in the same area, and (7) the amount of awards in similar cases. See Berman v. Linnane, 434 Mass. 301, 303 (2001); Linthicum v. Archambault, 379 Mass. 381, 388-89 (1970); Cummings v. National Shawmut Bank, 284 Mass. 563 (1934); Howe v. Tarvezion, 73 Mass.App.Ct. 10, 13 n.5 (2008) (the lodestar value may encompass a number of practical factors).
Because the result obtained is one factor to be considered in determining a reasonable fee, even under the lodestar method the Court may take into consideration the amount of the fund and its relation to the amount of the requested fee. In addition, the Supreme Judicial Court has indicated that, at least in statutory fee award cases, “(i]n limited circumstances, statutory fee awards may be enhanced to compensate for the risk of nonpayment.” Fontaine v. Ebtec Corp., 415 Mass. at 324. In Fontaine the court concluded that, “in a simple [G.L.c. 15 IB] discrimination case, the basic fee award, calculated by the lodestar method, is adequate to achieve the statutory purpose . . . [E]nhancement of the fee was not warranted in this case.” Id. at 326.[4]
III. Reasonableness of the Amount of Fees Requested
Guided by the above considerations, the Court concludes that the dispute in this case presented sophisticated questions of contract interpretation and disclosure requirements under federal securities laws; that the time and labor required of plaintiffs’ attorneys was — albeit over only a two-month period — substantial; that the amount of “damages,” measured as the amount of the fund created — $26,000,000—was substantial; and that the experience, reputation, and ability of attorneys on all sides was at a very high level in the relevant area.
With regard to the billing rates and hours charged by plaintiffs’ attorneys, the Court has reviewed the detailed statements submitted by the three firms representing plaintiffs, and makes the following observations. The average rates charged generally fall within the upper range of Boston rates for such services; however, the Court concludes that a fair amount of work done by certain partners could and should have been done by associates. See Affidavit of Thomas F. Maffei, at 5-6. The Court makes that adjustment by lowering the total average hourly billing rate among the three firms from $546 ($829,153 total charges divided by 1,519 total hours) to $450. The Court further concludes that duplication of time and effort among firms and attorneys requires a reduction of the total number of hours billed from 1,519 to 1,400. Thus *571 the appropriate lodestar is $450/hr. x 1,400 hours = $630,000.
The Court also concludes that an enhancement multiplier is appropriate. While it is true that the life of this litigation was brief, plaintiffs’ attorneys nevertheless expended substantial resources in that time, with no likelihood of payment except by succeeding on the merits and creating a significant fund for Arnicas shareholders. Recognizing their willingness to take on the risk of nonpayment, and of significant financial loss, serves the public policy purpose of encouraging “private attorneys to supplement the government’s law enforcement efforts” in the proxy context. Affidavit of William B. Rubenstein, at 20. Finally, the resulting fund of $26,000,000, the creation of which plaintiffs’ attorneys substantially assisted, is an exceptionally favorable result for Arnicas’ shareholders.
Taking into consideration the above factors, and in particular the risk of loss in light of the likelihood of success and the success actually achieved, the Court will apply an enhancement multiplier of five,[5] yielding a total fee of $3,150,000.[6]
ORDER
For the reasons stated above, the Plaintiffs’ Motion for Attorneys Fees is ALLOWED in the amount of $3,150,000, plus costs and expenses of $22,663.

 The parties have agreed that fees awarded by the Court will be paid separately by defendants, not out of the $26,000,000 fund.

 Cf. American Trucking Ass'ns., Inc. v. Secretary of Admin., 415 Mass. 337, 352-53 (1993) (rejecting suggestion that the plaintiffs’ attorneys should be compensated based on a percentage of the total amount recovered: “we believe that the lodestar method is the appropriate one to determine reasonable attorneys fees under [42 U.S.C.] § 1988, and is to be used to determine the amount of fees ultimately paid to the plaintiffs’ attorneys from the common fund").

 The lodestar approach seems especially appropriate— and the percentage approach especially inappropriate — in a case such as this one, where a large fund was obtained after brief, albeit, intensive, efforts by plaintiffs’ attorneys. This case is not like some class actions, in which a large common fund is obtained only after years of litigation and immense long-term commitment of resources by plaintiffs’ counsel. To employ the percentage approach in this case, where the lodestar is so relatively modest compared to the fund, is to risk building in a windfall for plaintiffs’ attorneys. The better, and in the Court’s view more logical, approach is to begin with the amount of fees reasonably billed, and to look to enhancement of those fees to achieve an award that gives due credit for the risk, complexity, and similar challenges the attorneys faced compared to the extremely favorable result they obtained.

 See also, Perdue v. Kenny A., 13 S.Ct. 1662, 1674 (Apr. 21, 2010) (enhancement due to superior performance and results permitted in extraordinaiy circumstances): Coutine v. Young and Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 and n.3 (1st Cir. 1997) (other potential enhancement elements include complex factual and doctrinal questions, the general significance of the result for a class of persons beyond the client, and exceptionally favorable results).

 Plainüffs’ fee request reflects an enhancement multiple of approximately six.

 That amount represents 12% of the common fund, well within the spectrum of awards under a percentage of fund approach.