NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-341                                        Appeals Court

JOHN A. GIFFORD  vs.  ANDREW J. BURKE & another.[1]


No. 17-P-341.

Suffolk.    December 6, 2017. - February 8, 2018.

Present:  Milkey, Henry, & Wendlandt, JJ.


Contempt.  Practice, Civil, Contempt, Appeal, Attorney's fees,
      Costs.



Civil action commenced in the Land Court Department on
December 30, 2008.

A complaint for contempt, filed on July 20, 2016, was heard
by Alexander H. Sands, III, J.


Michael J. Traft for the plaintiff.
Robert J. Cotton, pro se.


MILKEY, J.  John A. Gifford and Debra F. Gifford, who are

married, together held a fifty percent, undivided interest in

waterfront property in Revere (property).  In 2008, the Giffords

filed a petition for partition in Land Court against their

_____

[1] Robert J. Cotton, partition commissioner, was granted
leave to participate in this appeal as an intervener.  Andrew J.
Burke did not participate in this appeal.

coowner, Andrew J. Burke.  A Land Court judge appointed a partition commissioner (intervener Robert J. Cotton, henceforth, the commissioner) to assist the parties and the judge in resolving the matter.  See G. L. c. 241, § 12.  Nevertheless, the process did not go smoothly.  Indeed, the case, together with related litigation spawned in the Land Court, the Superior Court, and the United States Bankruptcy Court, took a path that best can be described as tortuous.

The current appeal, which is the third one having come before this court, is limited in scope.  In it, John Gifford appeals a contempt judgment that, in pertinent part, required him to pay certain fees and costs to the commissioner.[2]  We agree that the majority of the contested fees and costs are not recoverable, and we therefore vacate the contempt judgment and remand for further proceedings consistent with this opinion.

Background.  We begin by summarizing only those milestone events relevant to the current appeal.  In 2011, the Land Court judge ordered the Giffords to sell their share of the property to Burke and to pay off their mortgage on it.  In an unpublished memorandum and order issued on December 7, 2012, pursuant to our rule 1:28, that Land Court order was affirmed on appeal.

---

[2] As noted below, only John Gifford was the subject of the contempt judgment, because the proceedings involving Debra Gifford remained stayed as a result of pending bankruptcy proceedings.  Debra Gifford is not a party to this appeal.

Gifford v. Burke, 83 Mass. App. Ct. 1101 (2012). After the Giffords failed to comply, Burke filed a contempt complaint, but the matter was stayed after each of the Giffords filed for bankruptcy protection. Once the bankruptcy of John Gifford concluded, the property was in fact conveyed to Burke and the mortgage was discharged. After some additional Land Court proceedings related to the bankruptcy, final judgment in the partition action entered on April 6, 2015 (2015 judgment).

In the 2015 judgment, the judge ordered the Giffords to pay the commissioner $30,635 within thirty days after the entry of the judgment. That amount represented 100% of the commissioner's then-outstanding fees and costs. The judgment also referenced the judge's order of the same date, which included the following language relevant to the current appeal:

> "If [the Giffords] fail to timely comply with this [o]rder, the [c]ommissioner may seek additional relief against [the Giffords] in order to compel such compliance, including, without limitation, the entry of a monetary judgment against [the Giffords] in the amount of the [c]ommissioner's unpaid legal bills and/or an order of contempt for non-compliance with this [o]rder, and [the Giffords] may be held liable for any further legal fees as may be incurred by the [c]ommissioner in connection with enforcing this [o]rder."

The Giffords filed a notice of appeal from the 2015 judgment on April 17, 2015 (second appeal). They challenged the judge's allocation to them of 100% of the commissioner's outstanding fees, arguing that the judge erred in not requiring

Burke to pay a share of those fees. The Giffords also argued that the commissioner was not entitled to any fees for work done after they had paid off their mortgage.

Although the commissioner was not a party to the second appeal and never sought status as an intervener in the appeal, he submitted his own brief in support of Burke's position. He also participated in oral argument. A panel of the court once again ruled in Burke's favor in a memorandum and order pursuant to our rule 1:28, but summarily denied his request for appellate attorney's fees and double costs. Gifford v. Burke, 89 Mass. App. Ct. 1116 (2016). The commissioner made a parallel request to recover his own appellate attorney's fees and double costs, which was also denied.[3] The rescript was entered on the Land Court docket on July 12, 2016, and the second appeal came to a close.

On July 20, 2016, the commissioner filed a complaint for civil contempt against the Giffords, because he still had not been paid the fees and costs covered by the 2015 judgment. Those fees long since have been paid and no longer are in dispute. In the contempt action, the commissioner also sought payment for the time he spent representing himself in the second

---

[3] Both Burke and the commissioner had argued that the second appeal was frivolous and pursued in bad faith, citing to G. L. c. 231, § 6F; Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979); and Mass.R.Civ.P. 11(a), as amended, 456 Mass. 1401 (2010).

appeal.  Those requested fees and costs, which the Land Court judge and the parties referred to as "the Appeals Court [b]ills," totaled $17,619.51.  According to the commissioner, the Giffords are liable for such fees and costs pursuant to the 2015 judgment, because they constitute "further legal fees as may be incurred by the [c]ommissioner in connection with enforcing [the 2015 judgment]."  On this same basis, the commissioner sought payment for his time and costs in pursuing his contempt action, which he valued at $6,750.  The parties agreed that the contempt action should proceed only against John Gifford, because Debra Gifford's bankruptcy action remained pending.  The judge eventually issued a contempt judgment that, inter alia, required John Gifford to pay the commissioner "the entirety of the Appeals Court [b]ills, to wit: $17,619.51 [and] the entirety of his legal fees in connection with the [c]ommissioner's [c]ontempt [a]ction, to wit: $6,750.00."[4]

Discussion.  1.  The Appeals Court bills.  For purposes of this appeal, we will assume arguendo that the 2015 judgment

---

[4] Monies to fund the Giffords' obligations to the commissioner were placed in escrow.  Notwithstanding the pendency of this appeal, the judge ordered that $6,750 (for the commissioner's legal fees in the contempt action) be released to the commissioner from the escrow account.  Although the Giffords acquiesced to the release of those funds, they did not thereby waive their right to argue that the money was not owed.  Cf. PGR Mgmt. Co., Heath Properties v. Credle, 427 Mass. 636, 636 (1998) (tenant separately appealed from order releasing to her landlord all funds held in escrow).

provided the commissioner valid grounds to seek reimbursement of the attorney's fees and costs he incurred in participating in the second appeal. In other words, we will assume that such fees and costs properly could be characterized as "further legal fees . . . incurred . . . in connection with enforcing [the final judgment]."[5] Compare Howe v. Tarvezian, 73 Mass. App. Ct. 10, 17-19 (2008) (where partition commissioners have incurred "unnecessary additional work and expense" in defending on appeal award by Probate and Family Court of their fees and costs, they may petition appellate court for their appellate fees and costs pursuant to G. L. c. 215, § 45).[6] As noted, the commissioner already had sought his appellate fees and costs from this court during the second appeal, albeit solely on the grounds that that appeal was frivolous. At that time, the commissioner did not claim that his appellate fees and costs independently were

_____

[5] We note that the validity of this assumption is far from clear. Certainly, the commissioner had an interest in defending the amount of his fees, but only four of the fourteen pages of argument in the commissioner's brief in the second appeal dealt with that issue. The bulk of the appeal, and the commissioner's brief, dealt with what share of the commissioner's fees would be paid by the Giffords (as opposed to Burke). What legitimate interest the commissioner had with regard to that issue is not immediately apparent.

[6] Under a different statutory provision, judges of the Land Court and Probate and Family Court may award "reasonable costs and charges of partition proceedings," which include "the fees of counsel [and] of the commissioners." G. L. c. 241, § 22. In Howe v. Tarvezian, 73 Mass. App. Ct. at 17, we ruled that that section does not address appellate attorney's fees and costs.

recoverable as "enforcement" costs under the 2015 judgment and, therefore, the court did not reach that issue.

Having failed to raise the current grounds for recovering his appellate fees and costs to the court during the second appeal, the commissioner appears to have assumed that he was free to raise such grounds on remand. That assumption is erroneous. One seeking to recover appellate fees and costs generally is required to make such a request to the appellate court. Yorke Mgmt. v. Castro, 406 Mass. 17, 19-20 (1989). See Nardone v. Patrick Motor Sales, Inc., 46 Mass. App. Ct. 452, 454 (1999) ("Without a directive from this court, the [trial court] had no authority to award appellate attorney's fees and costs"). In fact, such a request is required to be made in the party's initial appellate brief. Fabre v. Walton, 441 Mass. 9, 10 (2004). Having failed to make a timely request to this court to recover his appellate fees and costs based on the terms of the 2015 judgment, the commissioner waived such a claim. See Beal Bank, SSB v. Eurich, 448 Mass. 9, 12 (2004); Haser v. Wright, 65 Mass. App. Ct. 903, 903-904 (2005). Furthermore, a party, of course, can be barred from asserting an issue he timely failed to raise in an earlier proceeding regardless of whether that issue actually had been litigated in that proceeding. Cf. Kobrin v. Board of Registration in Med., 444 Mass. 837, 843 (2005) (distinguishing between "issue preclusion," which

"prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim," and "claim preclusion," which "prevents relitigation of all matters that were or could have been adjudicated in the [prior] action" [quotations omitted]).

The judge therefore erred in awarding the commissioner reimbursement for any of the Appeals Court bills. Accordingly, the money held in escrow to secure payment of the Appeals Court bills should be returned to John Gifford.

2. The fees and costs in the contempt action. As the commissioner has acknowledged, much of the fees and costs that he incurred in prosecuting the contempt action related to his efforts to collect the Appeals Court bills. Because the commissioner at that point had forfeited any rights to recover his appellate fees and costs for the second appeal, the judge erred in allowing the commissioner additional fees and costs for trying to collect them.

However, some share of the fees and costs that the commissioner incurred in bringing the contempt action related to the fact that the Giffords at that time had not paid the original outstanding fees and costs required by the 2015 judgment.[7] We remand this matter to the Land Court for a

_____

[7] John Gifford argues that the entire contempt complaint was filed prematurely and that his motion to dismiss that complaint

redetermination of how much of the $6,750 that the commissioner has been paid for prosecuting the contempt action is recoverable on this basis, with the balance to be refunded to John Gifford.

3. <u>Attorney's fees and costs in this appeal</u>. Both parties have requested their appellate attorney's fees and costs in the current appeal. The Giffords do so on the ground that the commissioner's efforts to enforce the contempt judgment were frivolous. We deny that request as unfounded.

For his part, the commissioner has requested his current appellate attorney's fees and costs as enforcement costs recoverable under the 2015 judgment. To the extent that the commissioner's current fees and costs relate to his fruitless quest to recover payment for his earlier appellate fees and costs,[8] he is not entitled to recovery. However, as discussed above, the commissioner has prevailed in this appeal to the limited extent of upholding an as-yet-undetermined portion of

therefore should have been allowed. However, at the time he filed that motion to dismiss (August 15, 2016) -- even under his theory of when payment under the 2015 final judgment was due -- the deadline to make payment had run. It follows that even if the contempt action initially was premature, it was no longer so. Moreover, to the extent that a contempt action is a disfavored means of collecting a debt, we note that the judge specifically invited the commissioner to file such an action here. Finally, the alacrity with which the commissioner acted in filing his contempt complaint must be seen in the context of his having been owed a large sum for a lengthy period of time.

[8] The bulk of the commissioner's appellate brief addresses the Appeals Court bills and his efforts to recover payment on those bills.

the fees and costs he incurred in bringing the contempt proceeding. To that limited extent, he might be entitled to a share of his reasonable appellate attorney's fees and costs incurred in this appeal. In accordance with the procedure specified in Fabre v. Walton, 441 Mass. at 10-11, the commissioner may, within thirty days, submit a statement of his attorney's fees and costs related only to that portion of this appeal on which he prevailed (together with argument on why he believes he is entitled to such fees and costs).[9] Within fifteen days thereafter, John Gifford may submit an opposition to the amount requested.

The judgment on the commissioner's complaint for civil contempt is vacated and the case is remanded to the Land Court for further proceedings consistent with this opinion.

So ordered.

---

[9] We have given the commissioner thirty days rather than fifteen days to submit his application so that the parties have sufficient time to resolve the matter should they wish to do so. The limited issues that remain in dispute are: (1) how much the commissioner will be allowed to retain of the $6,750 already paid to him from the escrow account, and (2) whether the commissioner is entitled to a portion of his attorney's fees and costs incurred in the current appeal, and, if so, how much he is owed.