JAMES SANDOR FUSS *vs.* MARCIA PITCAIRN FUSS (No. 1)
(and three companion cases).

Barnstable.    November 3, 1976. — March 1, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Legitimacy.    Conflict of Laws,* Legitimacy.    *Name.    Jurisdiction, Civil,*
Name of child.    *Probate Court,* Costs, Counsel fees.

Where children of an invalid marriage were born in the State of New
York, while their parents resided in New York, New York law created their status with regard to legitimacy, and the fact that they were legitimate under New York law controlled their status as legitimate while domiciled in Massachusetts. [67-69]
In a proceeding in a Probate Court, evidence warranted a finding that
the best interests of children of an invalid marriage required inclusion of their paternal surname in their surnames. [69]
A probate judge acted within his discretion in taxing the costs of depositions to a party pursuant to Rule 54 (e) of the Massachusetts Rules of Domestic Relations Procedure (1975) [69-70]; however, where multiple proceedings in the Probate Court were in essence a declaratory judgment action, the judge erred in awarding a party other costs and expenses, including attorney's fees [70-72].

THREE PETITIONS filed in the Probate Court for the county of Barnstable on October 9, 1973, November 2, 1973, and January 9, 1974, respectively.

BILL IN EQUITY filed in the Probate Court for the county of Barnstable on March 7, 1974.

The cases were consolidated and were heard by *Knight,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Jacob M. Atwood* (*Joel Z. Eigerman* with him) for the defendant.

*Joseph D. Steinfield* (*Timothy J. Dacey* with him) for the plaintiff.

HENNESSEY, C.J.    These are appeals from an amended judgment of the Probate Court for Barnstable County concerning a case consolidated from four other cases. These cases have followed a highly complex procedural route. In essence, the parties, James Sandor Fuss (James) and Marcia Pitcairn Fuss (Marcia), requested that the Probate Court decide whether a marriage existed between them and define what parental rights stemmed from their relationship.

The facts of this dispute, as found by the probate judge, are as follows. Marcia is a wealthy woman who has participated in three marriage ceremonies. During her second marriage, to Robert Ogden (Robert), she met James, a man of limited income and no cash assets who "played an active part in causing a break-up of her marriage to Robert." In December, 1968, Marcia moved into James's New York apartment and began negotiations with Robert for an uncontested divorce. Soon these negotiations reached an impasse and Marcia became pregnant by James. Sandor Pitcairn Fuss (Sandor) was born in New York city in December, 1969.

In May, 1970, Marcia arranged for a Mexican divorce from Robert to be followed by a Mexican marriage to James. She and James both realized that the Mexican decrees would be invalid in New York. Without notice to Robert of the proposed divorce, Marcia went through a divorce proceeding conducted largely in Spanish, a language neither she nor James spoke or understood. A few minutes later, James and Marcia went through a marriage ceremony, likewise conducted mostly in Spanish. Four witnesses previously unknown to James and Marcia were present and certified, as Mexican law requires, that they personally had known the parties at least three years. This ceremony occurred before the divorce decree became final

under Mexican law. The judge found that there was no showing at the trial either that Mexican law prohibited remarriage minutes after entry of a divorce decree or that Mexican law would invalidate a marriage because of false statements by the witnesses to the marriage.

James and Marcia returned to New York city, where Sara Elizabeth Fuss (Sara) was born in January, 1972. The judge, relying on such evidence as residence and tax returns, found that James and Marcia were legal residents of New York, both in December, 1969, and in January, 1972. In June, 1973, Marcia moved, with the children, to her present residence in Massachusetts. In July, 1973, she filed a libel for divorce against Robert. James then filed requests for affirmation of marriage (October, 1973), custody of children (November, 1973), separate support (January, 1974) and declaratory relief concerning the status of the children (March, 1974). After these cases were consolidated for trial, Robert filed a libel for divorce from Marcia which was uncontested and was granted.

After twelve full days of trial, the judge found and ruled that no marriage has ever existed between James and Marcia and that therefore James is entitled neither to custody of the two children nor to separate support from Marcia. The judge also found that while Marcia is an immature and unstable person, it is in the best interests of the children that she be given their custody. However, applying § 24 (1) of New York Domestic Relations Law on the issue of legitimacy, the judge ruled that the two children are the legitimate children of James and Marcia despite the lack of a valid marriage between the children's biological parents.

In addition, the judge found that reasonable paternal visitation rights are in the children's best interests, despite James's "demonstrated mercenary financial approach to the marriage ... [and] questionable standard of moral values," because he has bonds of affection with his children. The judge ordered that Marcia include in the children's surnames their paternal name "Fuss," finding this order, too, to be in the children's best interests. Finally, the judge

awarded to James's counsel attorneys' fees amounting to $25,000, as well as costs and expenses amounting to $5,000, pursuant to G. L. c. 208, § 38, c. 209, § 33, c. 215, § 45, and common law authority. Included in costs were deposition expenses of $1,995.85 awarded pursuant to S.J.C. Rule 3:15, § 9, 351 Mass. 812 (1967).

Marcia appeals from the judge's determinations that the children are the legitimate children of herself and James, that "Fuss" must be included in the children's surnames, and that she must pay $30,000 for James's attorneys' fees, costs and expenses. We agree with the judge's conclusions that New York law controls these children's legitimacy status, that these children are legitimate under New York law, and that Marcia must include in the children's surnames their paternal name "Fuss." However, we find that the judge had no statutory authority or power under the common law to award general costs and attorneys' fees. The court could award only deposition costs pursuant to Rule 54 (e) of the Massachusetts Rules of Domestic Relations Procedure (1975). Consequently, we reverse the judgment below in so far as it orders Marcia to pay the remaining $28,004.15 for James's costs and attorneys' fees.

1. Massachusetts has long followed the rule that the status of a person as to legitimacy is defined by the law of the domicil which creates the status, and Massachusetts will recognize such status unless it is contrary to this Commonwealth's public policies. *Harding* v. *Townsend,* 280 Mass. 256, 260 (1932). *Green* v. *Kelley,* 228 Mass. 602, 605 (1917). *Ross* v. *Ross,* 129 Mass. 243, 246-247 (1880). In this case, the judge found, with substantial evidentiary support, that Sandor and Sara were born in New York while their parents resided in New York. Hence, New York law created their status with regard to legitimacy.

Application of the appropriate Massachusetts statute, G. L. c. 207, § 17, would render these children illegitimate. However, their legitimation by application of New York law accords with our policy favoring the "[r]emoval of the obstacles to the legitimation of innocent children who have no responsibility for the circumstances of their birth." See

Fuss *v.* Fuss (No. 1).

*Green, supra.* This same policy favors a rule which requires that children legitimate in their domicil of birth be held legitimate forever thereafter, thus preventing parents from illegitimating children by changing their domicil.[1] Since New York law created the relevant status in this case and is consistent with Massachusetts policy, we conclude that the judge was correct in his rulings that New York law controls the status of Sandor and Sara as to legitimacy.

New York Domestic Relations Law § 24 (1) (McKinney Supp. 1976) declares that a child born of parents who previously or subsequently enter into a civil marriage "authorized by the law of the place where such marriage takes place" is the legitimate child of both natural parents "notwithstanding that such marriage is void or voidable or has been or shall hereafter be annulled or judicially declared void." The purpose of this statute is to legitimate children of void marriages for policy reasons. *In re Adoption of Anonymous,* 71 Misc. 2d 1054, 1056 (N.Y. Sur. Ct. 1972). Its authors intended that willing unwed fathers could easily legitimate, even through bigamy, their natural children. *In re Estate of Flemm,* 85 Misc. 2d 855, 864 (N.Y. Sur. Ct. 1975).

The parents of Sandor and Sara entered into a civil marriage which has been judicially declared void. The judge found that there was no showing before him that the Mexican civil marriage was *unauthorized* by Mexican law, rather than merely void. Furthermore, legitimation of Sandor and Sara furthers New York's policy of easy paternal legitimation of and assumption of responsibility for natural children. See *Flemm, supra* at 864. Therefore, we agree with the probate judge's decision that Sandor and Sara are the legitimate children of James Sandor Fuss and Marcia Pitcairn Fuss under New York law and that New

---

[1] This policy may also require that children illegitimate in the State which creates their status be considered legitimate in Massachusetts if application of G. L. c. 207, § 17, would render them legitimate. See Restatement (Second) of Conflict of Laws § 287, Comment d at 256 (1971).

York law controls their status while they are domiciled in Massachusetts.

2. Similarly, we find no basis for setting aside the judge's finding that the best interests of Sandor and Sara require inclusion in their surnames of their paternal surname "Fuss." Unless plainly wrong, his finding on this matter is conclusive. *Margolis* v. *Margolis,* 338 Mass. 416, 417 (1959). The guiding principle when dealing with the relationship between any father and his child focuses on the best interests of the child. See *Gardner* v. *Rothman,* 370 Mass. 79, 81 (1976). We have previously found that changing a child's surname from that of his father may not be in the child's best interests because the name change may weaken the bonds between father and child. *Mark* v. *Kahn,* 333 Mass. 517, 521 (1956). The judge found, on evidence which warranted his findings, that bonds of affection exist between James and his children and that these bonds could be weakened by change of the children's names from Fuss to Pitcairn. We agree with the judge's decision that such a change would not be in the best interests of the children.

3. We affirm so much of the judgment as awarded to James deposition costs in the amount of $1,995.85. Supreme Judicial Court Rule 3:15, which permits taxation of costs under § 9, is inapplicable to civil proceedings in the Probate Court which are governed by the Massachusetts Rules of Domestic Relations Procedure. See S.J.C. rule 3:15, § 1 (a). However, these domestic relations rules, which cover proceedings under G. L. cc. 207-209 and 215 (see Rule 1) and which applied in the case at hand,[2] per-

---

[2] The Massachusetts Rules of Domestic Relations Procedure took effect as of July 1, 1975. James's motion for allowance of deposition costs was filed and allowed in April, 1975. However, in December, 1975, the probate judge ordered the payment of "costs and expenses in the amount of $5,000, a total of $30,000, constituting one amount covering *all* services and expenditures" (emphasis added). Thus he ordered payment of deposition costs as well as other legal expenses. The award of deposition costs as part of the court's judgment, in December, 1975, was governed by Rule 54 (e) of the Massachusetts Rules of Domestic Relations Procedure, although the motion for such costs in April, 1975, was subject to the old rules.

mit the court in its discretion to tax deposition costs if it finds that the depositions taken were reasonably necessary. Massachusetts Rules of Domestic Relations Procedure 54 (e) (1975). The judge found that the depositions taken by James's attorneys were reasonably necessary and that thus, in his discretion, he had the power to tax their costs against Marcia.

However, we find no basis in rule of court, statute or common law for the judge's award of other costs and expenses, including attorneys' fees.

There is no common law precedent for this award of costs and attorneys' fees. As a general rule in Massachusetts, a litigant must bear his own expenses except in so far as (1) a statute permits awards of costs, *Loyal Protective Life Ins. Co.* v. *Massachusetts Indem. & Life Ins. Co.,* 362 Mass. 484, 494 (1972), or (2) a valid contract or stipulation provides for costs, or (3) rules concerning damages permit recovery of costs. *Bournewood Hosp. Inc.* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 303, 311-312 (1976). Successful litigants can recover attorneys' fees as an item of damages only in a very restricted class of cases. *Bournewood Hosp. Inc.* v. *Massachusetts Comm'n Against Discrimination, supra* at 312 (attorneys' fees *not* allowed where important legislative public policy at issue). James has shown no exceptional circumstances which would invoke this limited rule of recovery. See *Chartrand* v. *Riley,* 354 Mass. 242, 244 (1968). On the contrary, this court has been particularly reluctant to permit recovery of defense costs, including attorneys' fees, to persons who were not free from fault. *Ford* v. *Flaherty,* 364 Mass. 382, 385-386 (1973). Compare *Hollywood Barbecue Co.* v. *Morse,* 314 Mass. 368, 369-370 (1943), and *Gray* v. *Boston Gas Light Co.,* 114 Mass. 149, 154 (1873) (indemnification allowed from third party for defense costs incurred because of negligent acts for which the claiming party was vicariously liable but in which he did not participate). The facts before us show clearly that James and Marcia share the responsibility for continuing this protracted course of litigation.

As to statutory authority, the opposing arguments of counsel are concerned for the most part with whether the complex and multifarious proceedings here were annulment proceedings. General Laws c. 207 (the annulment statute), unlike cc. 208 and 209 (the divorce statute and the separate support statute), does not expressly authorize awards of costs or attorneys' fees. Marcia argues that the actions were annulment proceedings and that the judge was without authority to award fees under the applicable statute. She further contends, in the alternative, that the proceedings were for declaratory relief and for that reason no fees would be awarded. Chapter 215, § 45, permits awards of costs in declaratory judgment actions in Probate Courts only when such actions concern matters relating to wills and estates as defined in c. 215, §§ 39A, 39B. *United Tool & Indus. Supply Co.* v. *Torrisi*, 359 Mass. 197, 199 (1971).[3]

James argues that the judge properly awarded fees under the annulment statute since language of G. L. c. 207, § 14, imports that authority from c. 208 (divorce) into c. 207 (annulment) by the following language: "Such action [to affirm or annul a marriage] shall be commenced in the same manner as an action for divorce, and all the provisions of chapter two hundred and eight relative to actions for divorce shall, so far as appropriate, apply to actions under this section." G. L. c. 207, § 14, as appearing in St. 1975, c. 400, § 3. It can be argued that this sentence, logically, incorporates the procedural provisions of c. 208, §§ 6-23, into c. 207, § 14. See, e.g., *Davis* v. *Seller*, 329 Mass. 385 (1952), wherein the court permitted a libellant's conservator to prosecute a libel for annulment under c. 208, § 7 (repealed by St. 1975, c. 400, § 13). In no annulment case has this court expressly sanctioned the award of fees, although there are somewhat cryptic references to the issue

---

[3] Statute 1976, c. 233, § 1, enacted after the decisions in the instant cases, provides that a court may award to parties against whom wholly insubstantial, frivolous, or bad faith claims or defenses are asserted an amount representing the reasonable counsel fees incurred in defending such claims. This statute took effect on July 1, 1977. St. 1976, c. 233, § 3.

in a few cases. See *Furst* v. *Furst,* 352 Mass. 774 (1967) (uncontested award of counsel fees in annulment proceedings affirmed in rescript opinion); *Davis* v. *Seller, supra* (cost and expenses allowed, pursuant to G. L. c. 208, § 38, to counsel of libellant in annulment action, where counsel was libellant's conservator admitted by the court, pursuant to G. L. c. 208, § 7, to prosecute annulment libel); *Levy* v. *Levy,* 309 Mass. 230 (1941) (trial judge had discretionary authority — see G. L. c. 261, § 13 — to deny award of counsel fees in annulment action brought in Superior Court).

We need not decide the issue of the statutory power to award costs and expenses in a c. 207, § 14, proceeding. We leave that question to another case where it is clearly presented. The multiple proceedings and counter proceedings in this litigation, however labeled, were in essence a declaratory judgment action. The relief James sought was that he be determined to be the children's father, that they bear his name, and, eventually, under the general prayer, that he be afforded reasonable visitation rights. That is precisely the relief James was afforded by the judge.

In summary, we reverse so much of the judgment of the Probate Court as awarded costs and fees in these proceedings in excess of $1,995.85. In all other respects the judgment is affirmed.

*So ordered.*