# United States Court of Appeals

## For the First Circuit

Nos. 15-1224
     15-1510

RFF FAMILY PARTNERSHIP, LP,

Plaintiff, Appellant,

v.

STEVEN A. ROSS, individually and in his capacity as
Trustee of BD Lending Trust; LINK DEVELOPMENT, LLC,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

Richard E. Briansky, with whom Amy B. Hackett and McCarter English, LLP were on brief, for RFF Family Partnership, LP.
Arnold E. Cohen, with whom Law Offices of Arnold E. Cohen was on brief, for Steven A. Ross.
Michael S. Bonner, with whom Gregory J. Aceto, Michael B. Cole, and Aceto, Bonner & Prager, P.C. were on brief, for Link Development, LLC.

---

\*     Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

February 18, 2016

**LYNCH**, **Circuit Judge**.  These appeals are the latest stage of a series of lawsuits involving Link Development, LLC ("Link"), BD Lending Trust ("BD"),[1] and RFF Family Partnership, LP ("RFF"). The three-way dispute has emanated from an unauthorized conveyance of a mortgage to BD ("BD Mortgage") by an attorney later disbarred, on a twenty-two acre commercial property in Saugus, Massachusetts ("the Property"), then owned by Link and now owned by RFF. Previous related litigation has resulted in two settlement agreements: a June 2012 settlement between Link and BD and a November 2012 settlement between RFF and BD.

In this diversity action, RFF appeals: (1) the district court's entry of summary judgment for Link and against RFF on RFF's claims on the validity of the BD Mortgage, on the basis that RFF was judicially estopped from challenging the validity of the BD Mortgage; (2) the district court's decision to exclude attorneys' fees from damages that BD owed RFF for breach of the settlement agreement between RFF and BD, and the district court's refusal to enter judgment as a matter of law in favor of RFF on contract damages; and (3) the district court's award of attorneys' fees to RFF under Chapter 93A of the Massachusetts General Laws for an

---

[1]     The named party in this suit is Steven A. Ross, who is being sued both individually and in his capacity as trustee of BD. We refer to the party as "BD" where Ross is being sued in his capacity as trustee of BD, and as "Ross" only with regard to claims against Ross in his individual capacity.

amount that was lower than what RFF had requested. In this opinion, we address Massachusetts law on many of these topics -- topics of general interest in Massachusetts commercial litigation.

We vacate the district court's entry of summary judgment against RFF on its claims pertaining to the validity of the BD Mortgage, and we remand for further proceedings. We affirm the district court's decisions related to contract damages and affirm the district court's award of attorneys' fees under Chapter 93A of the Massachusetts General Laws.

I.

In 2005, Link was formed by now-disbarred lawyer Stuart Sojcher on behalf of an investor to hold and develop the Property. In September 2006, Sojcher, without the authorization of Link, executed a $600,000 promissory note payable to BD, secured by the BD Mortgage. The loan was increased to $700,000 shortly thereafter. In October 2006, the BD Mortgage was recorded. In November 2006, after Sojcher absconded with most of the proceeds of the loan, Link defaulted on the loan and BD commenced foreclosure proceedings on the Property.

In December 2006, Link filed a complaint against Sojcher and BD in Massachusetts Superior Court seeking, inter alia, a declaration that the BD Mortgage was invalid because Sojcher had lacked Link's authorization to execute the mortgage.

- 4 -

In October 2007, while the Superior Court action was still pending, Link executed a $1.4 million note payable to RFF, secured by a mortgage on the Property ("RFF Mortgage"). As part of the loan agreement, Link represented that the RFF Mortgage would be a "good first mortgage and not . . . subject to any liens or encumbrances, whether inferior or superior." In March 2008, Link defaulted on the RFF loan. In March 2010, RFF foreclosed on the Property. RFF subsequently purchased the Property for itself at a public auction. RFF has continued to own the Property since that point.

In June 2011, RFF filed a complaint in the District of Massachusetts against BD and Link, alleging that Link had defaulted on its loan; that Link had falsely represented that it had conveyed a "good first mortgage"; and that the BD Mortgage was invalid. Complaint, RFF Family P'ship, LP v. Link Dev., LLC, No. 11-cv-10968 (D. Mass. June 1, 2011).

In June 2012, Link and BD agreed to a settlement of the 2006 Superior Court action ("Link/BD Settlement"). Link agreed to dismiss its claims against BD and waive its right to contest the BD Mortgage. In return, BD agreed to pay Link $450,000 up front and an additional sum of $750,000 with interest (or slightly less, depending on how long the debt remained outstanding) on a later date. To secure BD's payment obligation, BD provided Link with an

assignment of the BD Mortgage to be held in escrow and recorded in the event of BD's default.

In November 2012, RFF and BD agreed to a settlement of the 2011 federal action ("RFF/BD Settlement"). The parties declined to put the terms of the agreement on the record at the time, although it was later disclosed to the court that BD had agreed to discharge the BD Mortgage in exchange for a payment of $140,000 from RFF. Because the RFF/BD Settlement disposed of all of the claims against BD in the 2011 federal action, the district court dismissed BD and conducted a bench trial on RFF's claims against Link. The district court found in favor of RFF on several of its claims against Link, but it expressly declined to resolve the question of the validity of the BD Mortgage because that issue had been withdrawn pursuant to the RFF/BD Settlement.

In December 2012, BD notified Link that it intended to execute a discharge of the BD Mortgage in fulfillment of its obligation under the RFF/BD Settlement. Link, believing that such an action would be a breach of the Link/BD Settlement, recorded the assignment of the BD Mortgage it had held in escrow. BD has since claimed that it cannot discharge the BD Mortgage in fulfillment of its obligation under the RFF/BD Settlement because Link holds the assignment of the BD Mortgage. RFF successfully moved for an order to enforce the RFF/BD Settlement against BD and

later moved for contempt against BD for its continued refusal to discharge the BD Mortgage.

On January 10, 2014, RFF filed the complaint in this diversity action in the District of Massachusetts against Link, Ross, and BD. The complaint alleged the following five counts: (1) declaratory judgment on the invalidity of the BD Mortgage, against Link and BD; (2) breach of contract by BD on the RFF/BD Settlement; (3) negligent and/or intentional misrepresentation by BD and Ross for representations made at the time the RFF/BD Settlement was entered; (4) slander of title by Link and BD for BD's recording of the BD Mortgage, for Link's recording of the assignment of the BD Mortgage, and for Link's and BD's refusals to discharge the BD Mortgage; and (5) violation of Chapter 93A of the Massachusetts General Laws by BD and Ross. Various cross-claims were filed between Link and BD.

The interests at play are as follows. RFF, as owner of the Property, is seeking unencumbered title to the Property. RFF is taking two parallel approaches in that pursuit: it seeks to enforce BD's obligation under the RFF/BD Settlement to discharge the BD Mortgage while it also seeks a declaration that the BD Mortgage is invalid. Link holds the assignment of the BD Mortgage and is awaiting payment by BD of the remainder of the Link/BD Settlement. BD is in a bind because it is obligated by the RFF/BD Settlement to discharge the BD Mortgage but it cannot do so until

- 7 -

it makes its payment to Link, which is now holding the BD Mortgage. The $140,000 that RFF would pay BD to discharge the BD Mortgage is not enough to cover the amount that BD owes Link, and BD has no assets.

On September 30, 2014, the district court entered a memorandum and order on a number of pending evidentiary and dispositive motions. RFF Family P'ship, LP v. Link Dev., LLC, 53 F. Supp. 3d 267 (D. Mass. 2014). As relevant here, the district court denied Link's motion to dismiss RFF's claims on the invalidity of the BD Mortgage (Counts I and IV) on the bases of statute of limitations and res judicata. Id. at 274-76. However, the district court entered summary judgment for Link on those claims on the basis that RFF was judicially estopped from contesting the validity of the BD Mortgage. Id. at 278. The district court also ruled on partial summary judgment that BD had breached the RFF/BD Settlement. Id. at 277.

In January 2015, the district court held a jury trial on the remaining claims which, as relevant here, included damages suffered by RFF from BD's breach of the RFF/BD Settlement (since liability had been established as a matter of law) and the Chapter 93A claims against BD. On January 21, 2015, the jury returned its verdict. As relevant here, the jury awarded RFF $1 in damage for BD's breach of the RFF/BD Settlement and awarded $1 in damage for BD's violation of Chapter 93A.

These appeals followed.[2]

## II.

RFF first challenges the district court's entry of summary judgment for Link on Counts I and IV on the basis that RFF is judicially estopped from challenging the validity of the BD Mortgage. We hold that the district court abused its discretion in applying judicial estoppel, and that the outcome is not supported by either of Link's proposed alternative bases of res judicata or statute of limitations.[3] We vacate.

---

[2]    BD and Ross initially filed a cross-appeal, but they have since voluntarily dismissed the cross-appeal. Judgment, RFF Family P'ship, LP v. Ross, No. 15-1443 (1st Cir. Sept. 30, 2015). Only RFF's two appeals are before us.

[3]    RFF argues that we do not have jurisdiction to consider Link's alternative arguments on statute of limitations and res judicata because those issues are outside of the scope of its Notices of Appeal. That is not so.
      RFF's relevant Notice of Appeal states, in relevant part, that it is appealing "from the District Court's Memorandum and Order dated September 30, 2014 granting summary judgment in favor of the defendants on Counts I and IV of RFF's Complaint."
      If successful, Link's statute of limitations and res judicata arguments, although raised before the district court in a motion to dismiss and not on summary judgment, would support the district court's disposition of Counts I and IV. Even though neither statute of limitations nor res judicata was the district court's basis for decision, we consider those arguments because we may affirm summary judgment on any ground with record support. Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008).

A.    Judicial Estoppel

We review the district court's application of judicial estoppel for abuse of discretion.[4]   Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 30 (1st Cir. 2004).

Judicial estoppel is an equitable doctrine that "prevent[s] a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding."  Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010); see also New Hampshire v. Maine, 532 U.S. 742, 749 (2001).  The purpose of the doctrine is "to protect the integrity of the judicial process," New Hampshire, 532 U.S. at 749 (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," id. at 750 (quoting United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993)).  Courts typically invoke judicial estoppel "when a litigant tries to play fast and loose with the courts."  Perry, 629 F.3d at 8.

---

[4]    As we noted in establishing this standard in Alternative System Concepts, Inc. v. Synopsis, Inc., "[t]he fact that this case arises in the summary judgment context does not affect our decision to review the trial court's determination [of judicial estoppel] for abuse of discretion."  374 F.3d 23, 31 (1st Cir. 2004).

Although "[t]he contours of judicial estoppel are hazy" and "its elements cannot be reduced to a scientifically precise formula," we have identified three conditions that must be satisfied to establish judicial estoppel.[5] Id. at 8-9. "First, a party's earlier and later positions must be clearly inconsistent." Id. at 9; see also Alt. Sys. Concepts, Inc., 374 F.3d at 33 (for judicial estoppel, positions "must be directly inconsistent, that is, mutually exclusive"). "Second, the party must have succeeded in persuading a court to accept the earlier position." Perry, 629 F.3d at 9. To demonstrate acceptance of the prior position by a court, "a party need not show that the earlier representation led to a favorable ruling on the merits of the proceeding in which it was made, but must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition." Id. at 11. "Third, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court." Id. at 9.

---

[5] Because "judicial estoppel appears neither clearly procedural nor clearly substantive," there is a potential choice of law question of whether federal or state law should govern in this diversity action. Alt. Sys. Concepts, Inc., 374 F.3d at 32. Because RFF and Link both seem to assume the application of the federal law of judicial estoppel, we accept the parties' agreement without deciding the issue. See id. (declining to decide choice of law issue by, as we do here, relying on parties' agreement).

Link argues that RFF is judicially estopped from challenging the validity of the BD Mortgage because (1) RFF made representations that the BD Mortgage was valid in state court actions in Massachusetts Superior Court, the Massachusetts Appeals Court, and the Massachusetts Supreme Judicial Court, and those courts accepted such representations, and (2) RFF entered into and took actions to enforce the RFF/BD Settlement, which was allegedly predicated on the validity of the BD Mortgage.

1.  State Court Actions

As its first basis for judicial estoppel, Link points to a malpractice suit that RFF brought in Massachusetts Superior Court against its former counsel, Burns & Levinson LLP ("B&L"), which represented RFF in the 2007 loan transaction in which Link executed the RFF Mortgage.  The notice of claim that RFF sent to B&L in 2011 asserted that RFF had retained B&L to secure a first mortgage on the Property but that B&L had committed malpractice by "failing to identify and payoff [sic] an existing mortgage of record in favor of BD."  RFF asserted that as a result, the RFF Mortgage ended up "subordinate to the BD Mortgage."  RFF's October 2, 2012, amended complaint claimed that B&L committed malpractice by "fail[ing] to either discharge or subordinate" approximately $2.7 million in "senior liens of record" on the Property -- the BD Mortgage and another mortgage not relevant here.

- 12 -

B&L filed a motion to dismiss RFF's complaint for, inter alia, failure to sufficiently allege that RFF had suffered a loss as a proximate result of B&L's alleged malpractice. On November 21, 2012, the Superior Court denied B&L's motion, finding, inter alia, that RFF had sufficiently pleaded loss by alleging that as a result of B&L's alleged malpractice, the RFF Mortgage was subordinate to the BD Mortgage. RFF Family P'ship, LP v. Burns & Levinson, LLP, No. 12-2234, 2012 WL 6062740, at *4 (Mass. Super. Ct. Nov. 21, 2012) (noting that "[t]he Amended Complaint alleges . . . that due to the B&L defendants' malpractice, what ought to have been a first mortgage securing [RFF's] $1.4 million loan is in fact -- so far as record title is concerned -- in third position, behind $2.7 million in prior liens").

Link argues that RFF's representations to the Superior Court in the B&L malpractice action judicially estop RFF from now claiming that the BD Mortgage is invalid.[6] RFF responds that its

---

[6] Link also relies on similar statements made by RFF to the Massachusetts Appeals Court and the Supreme Judicial Court in seeking interlocutory review of a discovery order in the B&L malpractice action. In its petition for interlocutory review by the Massachusetts Appeals Court, RFF asserted that B&L "failed to subordinate or discharge certain preexisting liens encumbering the property and did not disclose this failure to RFF" and that "[a]s a result, RFF's mortgage was subordinate to approximately $2.7 million in liens." Link claims that the Massachusetts Appeals Court relied on those statements in granting interlocutory review and that the Supreme Judicial Court also relied on those statements in taking the case sua sponte.

We treat RFF's statements in the Massachusetts Appeals

- 13 -

prior statements that the RFF Mortgage was subordinate to the BD Mortgage did not presuppose the validity of the BD Mortgage.

We agree with RFF that RFF's position in the instant action that the BD Mortgage is invalid is not "directly inconsistent, that is, mutually exclusive," Alt. Sys. Concepts, Inc., 374 F.3d at 33, with RFF's prior statements. An allegation that lawyers engaged in malpractice by failing to discover and address a senior encumbrance of record on a property before executing a supposed first mortgage does not rest on an assumption that the prior encumbrance was valid. Even an invalid mortgage can be a senior encumbrance of record that clouds title. See 65 Am. Jur. 2d Quieting Title and Determination of Adverse Claims § 13 ("A cloud on title is an outstanding instrument, record, claim, or encumbrance that is actually invalid or inoperative but may nevertheless impair the title to property."). This conclusion is supported by Link's summary judgment filings in the district court, where Link claimed judicial estoppel on the basis that "[t]o make the argument that the RFF mortgage was subordinate to the BD Mortgage, RFF impliedly was contending that the BD mortgage is valid, rather than invalid." RFF's "implied[]" position in its

---

Court and Supreme Judicial Court together with RFF's Superior Court allegations because they are essentially the same in substance: that B&L's malpractice injured RFF by making the RFF Mortgage "subordinate" to existing liens on the Property, including the BD Mortgage.

- 14 -

prior litigation does not meet the "directly inconsistent" requirement for judicial estoppel.

Moreover, it is not certain that the Superior Court accepted RFF's implied position to be that the BD Mortgage was valid, as necessary to meet the second requirement for judicial estoppel. On the contrary, the Superior Court's recitation of RFF's allegations included the express limitation that "what ought to have been a first mortgage . . . is in fact -- so far as record title is concerned -- . . . behind . . . prior liens." RFF Family P'ship, LP, 2012 WL 6062740, at *4 (emphasis added). Additionally, the Superior Court expressly recognized that RFF was seeking to void the BD Mortgage in a separate pending action, and it acknowledged that RFF might later be able to recover against B&L for the costs incurred in that separate action. Id. at *2, *4.

Because there is no support in the record for the district court's conclusion, the district court abused its discretion in concluding that RFF's position in the instant case is judicially estopped by RFF's prior state court representations.

2. RFF/BD Settlement and RFF's Attempts at Enforcement

As its second basis for judicial estoppel, Link points to the RFF/BD Settlement and RFF's subsequent actions to enforce that settlement and hold BD in contempt for noncompliance.

On November 14, 2012, RFF reported to the district court that it had settled its claim against BD in the 2011 federal case,

- 15 -

but it declined to put the terms of the settlement on the record. In reliance on the settlement, the district court dismissed BD from the 2011 case. The district court understood the RFF/BD Settlement as removing the issue of the validity of the BD Mortgage from the litigation and proceeded to conduct a trial only on RFF's claims against Link.

Subsequently, RFF filed a motion to enforce the RFF/BD Settlement, and the district court granted that motion on June 26, 2013. On October 23, 2013, RFF filed a motion for contempt against BD for violation of the district court's order on the previous motion to enforce the RFF/BD Settlement. Filings in those subsequent proceedings showed the terms of the RFF/BD Settlement to be that RFF would pay BD $140,000 in return for a discharge of the BD Mortgage.

Link argues that the RFF/BD Settlement and RFF's subsequent efforts to enforce the settlement were premised on the validity of the BD Mortgage and that RFF cannot now assert invalidity. However, the fact of settlement cannot be taken as any admission by RFF. Rather, a settlement is born of compromise. Cf. Fed. R. Evid. 408 advisory committee's note to 1972 proposed rules (suggesting that evidence of a settlement offer is irrelevant to validity or invalidity of the underlying claim because it "may be motivated by a desire for peace rather than from any concession of weakness of position"). Nor did the settlement entail judicial

acceptance of any position taken by RFF. See Perry, 629 F.3d at 12 ("[S]ettlement 'neither requires nor implies any judicial endorsement of either party's claims or theories.'" (quoting In re Bankvest Capital Corp., 375 F.3d 51, 60 (1st Cir. 2004))); see also Lowery v. Stovall, 92 F.3d 219, 225 (4th Cir. 1996) ("[J]udicial estoppel does not apply to the settlement of an ordinary civil suit because 'there is no "judicial acceptance" of anyone's position' . . . ." (quoting Reynolds v. Comm'r of Internal Revenue, 861 F.2d 469, 473 (6th Cir. 1988))). Link points to the next sentence in Perry, that "[s]o viewed, an unexplained settlement does not provide the prior success necessary for judicial estoppel," 629 F.3d at 12, and attempts to distinguish Perry on the basis that the RFF/BD Settlement was well known to the district court and therefore not an "unexplained settlement." But the logic of the prior statement in Perry (that settlement does not require judicial endorsement of either side) did not depend on the unexplained nature of the settlement in that case, and In re Bankvest Capital Corp., the opinion quoted in Perry, did not suggest such a limitation. 375 F.3d at 60.

The RFF/BD Settlement does not judicially estop RFF's claims of invalidity. Nor did RFF, by later suing to enforce the settlement, stake out a position inconsistent with its instant claim that the BD Mortgage is invalid. The district court, by

- 17 -

reaching a conclusion with no support in the record, abused its discretion in applying judicial estoppel.

B.    Statute of Limitations

Link suggests that were we to conclude that the district court erred in applying judicial estoppel, we could still affirm on the alternate basis that RFF's declaratory judgment and slander of title claims are barred by the statute of limitations.  We disagree.

Link argues that because both claims are premised on the allegation that the recording of the BD Mortgage encumbered RFF's title, the statute of limitations should have started to run in October 2006, when the BD Mortgage was recorded.  At the latest, Link argues, the causes of action accrued in March 2010 when RFF foreclosed on the Property.  Link argues that based on either of those dates, the January 10, 2014, complaint in this action is untimely under the three-year statute of limitations for slander of title claims in Massachusetts.  Mass. Gen. Laws ch. 260, § 4.

The district court rejected this claim on the basis that the statute of limitations began to run only upon the December 2012 assignment of the BD Mortgage to Link.  RFF Family P'ship, LP, 53 F. Supp. 3d at 274-75.  We agree.  Slander of title under Massachusetts law is "essentially a claim of defamation where the false statement focuses on the plaintiffs' rights in property." George v. Teare, No. CA994102, 2000 WL 1512376, at *3 (Mass. Super.

- 18 -

Ct. Sept. 5, 2000); see also Karmaloop, Inc. v. Sneider, No. 08-3580, 2013 WL 5612721, at *4 (Mass. Super. Ct. Apr. 25, 2013). RFF's slander of title claim is based on Link's recording of the assignment of the BD Mortgage on December 6, 2012. The statute of limitations could not have begun to run prior to that date because the allegedly defamatory recording had not yet taken place. Even if it were the case that the defamatory statement existed prior to that in the form of the BD Mortgage, RFF could not have asserted a slander of title claim until it acquired title to the Property on June 22, 2011 -- and the action is timely even if we use that date instead.

As for the declaratory judgment count, Link's only argument is that it is in substance identical to the slander of title claim and that the slander of title claim is untimely. As we have concluded that the slander of title claim is timely, Link has no remaining argument as to why we must dismiss the declaratory judgment claim as untimely.

C.   Res Judicata

Link suggests that if we do not affirm on judicial estoppel or statute of limitations, we may alternatively affirm by finding that the RFF/BD Settlement has res judicata effect that prevents RFF from relitigating the validity of the BD Mortgage. The district court rejected this argument, and the district court was correct to do so.

"The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action."[7] TLT Constr. Corp. v. A. Anthony Tappe & Assocs., Inc., 716 N.E.2d 1044, 1049 (Mass. App. Ct. 1999) (quoting Heacock v. Heacock, 520 N.E.2d 151, 152-53 (Mass. 1988)). Under Massachusetts law,[8] three elements are required for claim preclusion: "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause of action;

---

[7] Under Massachusetts law, the term "res judicata" includes both claim preclusion and issue preclusion. Heacock v. Heacock, 520 N.E.2d 151, 152 n.2 (Mass. 1988). Link appears to be arguing only for claim preclusion.

[8] The parties again fail to address the choice of law issue. Link cites mostly Massachusetts cases, while RFF cites federal law from various circuits.

Under Semtek International Inc. v. Lockheed Martin Corp., "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." 531 U.S. 497, 508 (2001). The appropriate rule under federal common law is "the law that would be applied by state courts in the State in which the federal diversity court sits," id., unless that rule would be "incompatible with federal interests," id. at 509.

We have no occasion to determine whether there is any incompatibility with federal interests under Semtek because it seems that here, "under either federal or Massachusetts law, the outcome is the same," Hatch v. Trail King Indus., Inc., 699 F.3d 38, 44 (1st Cir. 2012). Both federal and Massachusetts law seem to apply similar three-element tests for claim preclusion, see Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 177 (1st Cir. 1999) (articulating three-element test similar to test in TLT Construction Corp., above), and neither party suggests that there is any relevant difference in how Massachusetts and federal law apply those tests.

and (3) prior final judgment on the merits."  Id. (quoting Gloucester Marine Rys. Corp. v. Charles Parisi, Inc., 631 N.E.2d 1021, 1024 (Mass. App. Ct. 1994)).

The district court held that claim preclusion does not apply because the third element is missing.  It explained: "While a settlement can have preclusive effect, that is so only if the Court enters a final judgment which it did not . . . .  The validity of the BD Mortgage was not adjudicated in any decision or judgment entered as part of the 2011 case."  RFF Family P'ship, LP, 53 F. Supp. 3d at 275-76.  We agree.[9]

We have held in cases under federal law that settlements may have preclusive effect if there is court approval of the settlement or there is entry of judgment with prejudice.  See United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998) ("[A] voluntary dismissal with prejudice is ordinarily deemed a final judgment that satisfies the res judicata criterion."); Langton v. Hogan, 71 F.3d 930, 935 (1st Cir. 1995) ("When a dispute of law exists between parties to a case and they agree to a settlement of that dispute and entry of a judgment with prejudice based on that settlement, then the terms of that judgment in relation to that legal issue are subject to res judicata principles.  A judgment

---

[9]  For that reason we do not need to evaluate the other two elements of claim preclusion, and we decline to do so to avoid making unnecessary pronouncements on state law.

that is entered with prejudice under the terms of a settlement, whether by stipulated dismissal, a consent judgment, or a confession of judgment, is not subject to collateral attack by a party or a person in privity, and it bars a second suit on the same claim or cause of action."); In re Medomak Canning, 922 F.2d 895, 900 (1st Cir. 1990) ("Generally, a court-approved settlement receives the same res judicata effect as a litigated judgment . . . .").

Whether the same is true under Massachusetts law is uncertain. Link cites no Massachusetts case in which any settlement was given claim preclusive effect. But, assuming without deciding that Massachusetts law is similar to federal law, the RFF/BD Settlement lacks either of the characteristics found in settlements that have been given claim-preclusive effect.

First, the RFF/BD Settlement was not a court-approved settlement. Although the case law does not appear to elaborate on what it means for a settlement to be court-approved, the record does not support the claim that the district court approved the settlement. Link claims that the district court approved the settlement on two different occasions. The first supposed approval was when RFF informed the court of the settlement, the district court confirmed with the parties that "all matters have been resolved to satisfaction of both parties," and the district court subsequently dismissed BD from the case in reliance on that

- 22 -

settlement.  The second supposed approval was when, in allowing RFF's motion to enforce the settlement, the district court "f[ound] that RFF and [BD] agreed upon all material terms of a settlement and that it is a valid and binding agreement."  But neither of those occasions could be considered to be court approval.  On the first occasion, the terms of the settlement were not even disclosed to the district court, so the mere fact that the district court asked the parties whether they were satisfied with the agreement could not count as approval of the settlement.  On the second occasion, the district court was referring to the enforceability of the settlement as a private contract, not giving judicial approval to the settlement.  In In re Medomak Canning, the case that Link cites for the court-approval requirement, the parties filed a "Joint Application for Approval of Compromise" with the bankruptcy court, and they received such approval.  922 F.2d at 897.  On neither occasion here was there any such court approval procedure that could give the settlement claim-preclusive effect.

Second, RFF received what was likely a voluntary dismissal without prejudice. Federal Rule of Civil Procedure 41(a) provides that, for either of the two types of voluntary dismissal it describes, dismissal is without prejudice unless stated otherwise.  There was no such statement in the district court's dismissal of the BD Mortgage invalidity claim in the 2011 federal action.  RFF Family P'ship, LP v. Link Dev., LLC, 932 F. Supp. 2d

- 23 -

213, 228 (D. Mass. 2013) (dismissing Count I, for declaratory judgment on the validity of the BD Mortgage, based on the pretrial settlement without specifying whether dismissal was for prejudice).

Because the RFF/BD Settlement was not a court-approved settlement and did not receive a dismissal with prejudice, it possesses neither of the characteristics of settlements that have been found to have claim-preclusive effect.[10] A purely private settlement binds parties as a matter of pure contract law, but Link points to no authority to show that a purely private settlement should have claim-preclusive effect that prevents subsequent judicial action. While this outcome unintuitively allows RFF to reopen the issue of the validity of the BD Mortgage after reaching a settlement of that claim in an earlier action, that problem is not for the doctrine of claim preclusion to solve. Rather, parties can avoid this situation in the future by including a release of claims as part of a settlement agreement -- just as the Link/BD Settlement contained a release in which Link waived any future challenge to the validity of the BD Mortgage, and just as the RFF/BD Settlement could have done.

---

[10] We express no opinion as to whether either of those characteristics, standing alone, would have been sufficient for the settlement to have preclusive effect or whether the existence of both would have been either necessary or sufficient.

To recapitulate, the district court abused its discretion in finding judicial estoppel and its entry of summary judgment for Link on Counts I and IV is not saved by either of the alternative bases for affirmance offered by Link.  We vacate.

III.

We proceed to RFF's breach of contract claim against BD. Because the district court concluded as a matter of law that BD had breached the RFF/BD Settlement by failing to discharge the BD Mortgage, the only issue at trial on that claim was the amount of damages sustained by RFF as a result of that breach.  Following the close of evidence and the jury verdict, respectively, the district court denied RFF's initial and renewed motions for judgment as a matter of law on damages in the amount of attorneys' fees incurred to prosecute the claims plus the amount needed to discharge the BD Mortgage, instructed the jury that it could not consider attorneys' fees in awarding damages, and excluded evidence of attorneys' fees from the jury's consideration.

RFF claims two errors.  First, RFF argues that the district court erred as a matter of law by excluding attorneys' fees from contract damages and thereby denying judgment as a matter of law, instructing the jury not to consider attorneys' fees, and excluding such evidence from the jury.  Second, RFF argues that the district court erred in not granting judgment as a matter of

- 25 -

law on $866,000 in damages, based on the amount that Link was demanding for a discharge of the BD Mortgage.

We review the denial of a judgment as a matter of law de novo, examining the evidence in the light most favorable to the nonmovant. Jones ex rel. United States v. Massachusetts Gen. Hosp., 780 F.3d 479, 487 (1st Cir. 2015). Unpreserved challenges to orders excluding evidence are reviewed for plain error. United States v. Powers, 702 F.3d 1, 10 (1st Cir. 2012); see also Fed. R. Evid. 103(e).

A. Attorneys' Fees

RFF first challenges the district court's decision to exclude attorneys' fees from damages for breach of contract on the basis that there was "no reason not to follow the so-called American Rule."

RFF argues that because the legal fees it incurred in enforcing the RFF/BD Settlement and attempting to discharge the BD Mortgage were a direct result of BD's breach of its obligations under the RFF/BD Settlement, those fees are recoverable as compensatory damages. RFF argues that recovery of attorneys' fees as compensatory damages is different from the award of attorneys' fees as costs of the action, and that the American Rule does not preclude the former. RFF cites only a single line of cases under Ohio law in support of its argument. Rohrer Corp. v. Dane Elec Corp. USA, 482 F. App'x 113, 117 (6th Cir. 2012); Raymond J.

Schaefer, Inc. v. Pytlik, No. OT-09-026, 2010 WL 3820552, at *6 (Ohio Ct. App. Sept. 30, 2010); Shanker v. Columbus Warehouse Ltd. P'ship, No. 99AP-772, 2000 WL 726786, at *5 (Ohio Ct. App. June 6, 2000).

BD responds[11] that RFF's argument is unavailing because Massachusetts law governs this case,[12] and RFF has presented no Massachusetts authority to support the argument that attorneys' fees may be considered part of compensatory damages for breach of a settlement agreement.

On the contrary, "[t]he usual rule in Massachusetts is to prohibit successful litigants from recovering their attorney's fees and expenses except in a very limited class of cases." Preferred Mut. Ins. Co. v. Gamache, 686 N.E.2d 989, 991 (Mass. 1997) (describing Massachusetts's use of the "American Rule"). The limited class of cases includes those arising when "(1) a statute permits awards of costs, or (2) a valid contract or stipulation provides for costs, or (3) rules concerning damages permit recovery of costs." Fuss v. Fuss, 368 N.E.2d 271, 274

---

[11]     As a threshold matter, BD argues that RFF has waived its argument that attorneys' fees should be recoverable as contract damages.  We decline to resolve this waiver issue but, instead, resolve the issue (favorably to BD) on the merits.

[12]     The parties appear to agree that Massachusetts law governs the request for attorneys' fees in this case, and so do we.  See In re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 15 (1st Cir. 2012); Krewson v. City of Quincy, 74 F.3d 15, 17 (1st Cir. 1996).

(Mass. 1977) (citations omitted).  The third exception in Fuss, which admits of the possibility that "rules concerning damages [may] permit recovery of costs," id., seems to foreclose RFF's argument that its framing of attorneys' fees as part of compensatory damages rather than as costs of the action removes it from the scope of the American Rule.  Rather, to prevail on this issue, RFF must identify Massachusetts authority supporting a "rule[] concerning damages [that] permit[s] recovery of costs," id., in this kind of situation.  RFF has not done so, and we decline to extend Massachusetts law beyond what is supported by existing authority.[13]  See Braga v. Genlyte Grp., Inc., 420 F.3d 35, 42 (1st Cir. 2005) ("A federal court sitting in diversity must 'take care not to extend state law beyond its well-marked boundaries in an area . . . that is quintessentially the province of state courts.'" (alteration in original) (quoting Markham v. Fay, 74 F.3d 1347, 1356 (1st Cir. 1996))).

---

[13]    To the extent that there is any Massachusetts authority, it cuts against RFF.  In Wilkinson v. Citation Insurance Co., the Supreme Judicial Court drew a distinction between "[t]he amount recovered on any contract breach" and "the cost to the prevailing party of establishing the breach, typically attorney's fees."  856 N.E.2d 829, 836 n.9 (Mass. 2006).  The SJC suggested that the "benefit of the bargain" under a contract does not include fees incurred in establishing recovery under that contract.  Id.  As applied here, the benefit of the bargain that RFF can recover as compensatory damages is limited to what it negotiated for in the RFF/BD Settlement, namely, discharge of the BD Mortgage.  RFF attempts to extend the benefit of the bargain to include the benefit of not having to litigate to receive that discharge, but Wilkinson weighs against such a move.

In the alternative, RFF relies on a Massachusetts rule called the third-party attorney fee exception. Under that exception, attorneys' fees can be collected as part of damages when "tortious conduct . . . requir[es] the victim of the tort to sue or defend against a third party in order to protect his rights." M.F. Roach Co. v. Town of Provincetown, 247 N.E.2d 377, 378 (Mass. 1969). In M.F. Roach, a corporation tortiously interfered with the plaintiff's performance of its contract with the town, and the court awarded the plaintiff damages against the corporation for the plaintiff's loss of profits on the contract as well as attorneys' fees for the plaintiff's action against the town to restore contractual rights. Id. RFF argues that, like in M.F. Roach, to the extent that BD's breach required RFF to file this action against Link to discharge the BD Mortgage, the attorneys' fees should be included in the damages.

RFF cannot recover on this theory. As an initial matter, RFF did not raise the third-party fee exception in the district court, so it is likely waived. United States v. Graf, 784 F.3d 1, 6 n.6 (1st Cir. 2015); Millay v. Maine Dep't of Labor, Bureau of Rehab., Div. for Blind & Visually Impaired, 762 F.3d 152, 157 n.4 (1st Cir. 2014). But even if we consider it a variant of the more general arguments that RFF raised in district court about the inclusion of attorneys' fees in compensatory damages, M.F. Roach is distinguishable -- although not for the reasons that BD argues.

- 29 -

BD offers only one plausible basis for distinguishing M.F. Roach: that BD was allegedly responsible for breach of contract, whereas M.F. Roach involved tortious behavior. But while it is true that M.F. Roach referred expressly to "tortious conduct," BD does not raise any reason why the same situation could not arise in a contract action. In fact, our circuit has previously seemed to understand M.F. Roach as applying equally to breach of contract actions. See Mut. Fire, Marine & Inland Ins. Co. v. Costa, 789 F.2d 83, 88 (1st Cir. 1986) (citing M.F. Roach for proposition that "when the natural consequence of a defendant's tortious conduct or a defendant's breach of contract is to cause the plaintiff to become involved in litigation with a third party, the attorney's fees associated with that litigation are recoverable from the defendant") (first emphasis added)).

The more relevant distinction is that in M.F. Roach -- at least insofar as the thin recitation of the facts in that case allows us to gather -- the only way for the plaintiff to restore contractual rights lost as a result of the defendant's tortious interference was to bring a suit against the third party. See O'Brien v. New Eng. Tel. & Tel. Co., 664 N.E.2d 843, 850 (Mass. 1996) (describing M.F. Roach as a situation in which "the plaintiff is forced to sue a third party to hold it to the bargain with which a defendant intentionally and wrongfully interfered" (emphasis added)). Here, BD's breach did not force RFF to bring a suit

- 30 -

against Link to invalidate the BD Mortgage. Rather, RFF's contract action against BD could afford RFF a full recovery for any damages that RFF suffered as a result of BD's breach. RFF cannot claim as damages the litigation expenses incurred to bring an action against a third party that it was not forced to bring.

In sum, we find no error in the district court's decision to exclude attorneys' fees from contract damages. We note that the parties could have inserted into the settlement a clause making attorneys' fees recoverable in the event suit had to be brought to enforce the settlement. However, they chose not to do so.

B.   Contract Damages of $866,000

RFF argues that it was entitled to a judgment as a matter of law on Count II for contract damages of $866,000, the sum that Link is demanding to discharge the BD Mortgage. This argument has not been adequately preserved for appeal.

In its Rule 50(a) motion filed after the close of evidence, RFF requested that the court direct a verdict on damages for "the amount of money necessary for RFF to obtain a discharge of [the BD M]ortgage, with that amount to be determined by the jury." RFF did not specify a dollar figure or press any theory for how that amount should be calculated. In renewing the claim in its Rule 50(b) motion after the jury verdict, RFF attached a dollar figure to that amount for the first time and argued that based on the evidence in the record, no reasonable juror could

have awarded damages in any amount lower than $866,000. In the Rule 50(b) motion and before us now, RFF derived the $866,000 figure from the amount that Link's manager testified that Link was demanding for a discharge of the BD Mortgage.

In order to challenge the sufficiency of evidence on appeal, the claim must have been raised in a Rule 50(a) motion and then renewed in a Rule 50(b) motion. Latin Am. Music Co. Inc. v. Media Power Grp., Inc., 705 F.3d 34, 38 (1st Cir. 2013) (citing Hammond v. T.J. Litle & Co., 82 F.3d 1166, 1171 (1st Cir. 1996)); see also Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 405 (2006). The Rule 50(a) motion "must be sufficiently specific so as to apprise the district court of the grounds relied on in support of the motion." T G Plastics Trading Co. v. Toray Plastics (Am.), Inc., 775 F.3d 31, 39 (1st Cir. 2014) (quoting Monteagudo v. Asociación de Empleados del Estado Libre Asociado de P.R., 554 F.3d 164, 170 (1st Cir. 2009)). Arguments must be "'spell[ed] out . . . squarely and distinctly' in the district court" to avoid waiver. Id. (alterations in original) (quoting United States v. Samboy, 433 F.3d 154, 161 (1st Cir. 2005)).

RFF's Rule 50(a) motion was not sufficient to put the district court on notice of the argument it is making before us now. RFF's request for damages in "the amount of money necessary for RFF to obtain a discharge of the mortgage, with that amount to be determined by the jury" gave no hint to the district court of

- 32 -

its argument now that there was no evidence before the jury that would allow the jury to return a verdict of less than $866,000 in damages.

Nor is RFF saved by having argued for $866,000 in its Rule 50(b) motion. A Rule 50(b) motion cannot be used to introduce "a legal theory not distinctly articulated" in the Rule 50(a) motion. Parker v. Garrish, 547 F.3d 1, 12 (1st Cir. 2008) (emphasis added) (quoting Correa v. Hosp. S.F., 69 F.3d 1184, 1196 (1st Cir. 1995)). RFF's subsequent expansion of an argument that was merely a toehold in the Rule 50(a) motion did not suffice to preserve the issue for appeal.

IV.

Finally, RFF argues that the district court erred by awarding it attorneys' fees under Massachusetts General Laws, Chapter 93A, in an amount lower than what RFF had requested.

After the jury found a violation of Chapter 93A by BD and awarded RFF nominal damages, RFF sought $191,029.65 in attorneys' fees.[14] The district court awarded $47,757 in attorneys' fees, which was twenty-five percent of the amount sought by RFF. RFF Family P'ship, LP v. Link Dev., LLC, No. 14-10065, 2015 WL 1472253, at *5 (D. Mass. Mar. 31, 2015). The district

---

[14] A party prevailing on a Chapter 93A claim is entitled to recover "reasonable attorneys' fees and costs incurred in said action." Mass. Gen. Laws ch. 93A, § 11.

court's reasons for the reduction included "the minimal success and limited damages recovered by RFF at trial and the insufficient documentation RFF provided to the Court in support of its request." Id. RFF contests this reduction in the fee award.[15]

In awarding attorneys' fees under Chapter 93A, courts are directed to "consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases."[16] Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 837 N.E.2d 1121, 1138 (Mass. 2005) (quoting Linthicum v. Archambault, 398 N.E.2d 482, 488 (Mass. 1979)). "No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required." Id. (quoting Berman v. Linnane, 748 N.E.2d 466, 469 (Mass. 2001)).

The district court wrote a detailed and careful order that considered those exact factors: the "very limited recovery RFF obtained in this case," namely only nominal damages, RFF Family

---

[15] The district court also denied RFF's request for $3,229 in costs, RFF Family P'ship, LP, 2015 WL 1472253, at *2, *5, but RFF does not appear to be appealing that denial.

[16] Both parties assume, and we agree, that Massachusetts law governs the award of attorneys' fees here. Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 16 (1st Cir. 1996).

P'ship, LP, 2015 WL 1472253, at *3; the "poor quality of the supporting documentation" submitted by RFF as proof of the fees it incurred, id. at *4; the inclusion in that documentation of legal work pertaining to noncompensable claims and the difficulty the district court encountered in attempting to distinguish between compensable and noncompensable fees, id.; and the numerous redactions in the bills that prevented the district court from determining the reasonableness of the fees requested, id. at *5. In the end, the fee award is "largely discretionary," Twin Fires Inv., LLC, 837 N.E.2d at 1138, and there was no abuse of discretion here.

There was no requirement under Massachusetts law that the district court strictly apply the lodestar method and calculate the reduction in the fee award by the hour. The Supreme Judicial Court has made it clear that judges are "not required to review and allow or disallow each individual item in the bill, but [can] consider the bill as a whole." Berman, 748 N.E.2d at 469.

V.

For the reasons stated, we vacate the district court's entry of summary judgment against RFF on its claims on the validity of the BD Mortgage, and we remand for further proceedings consistent with this opinion. We affirm the district court's decisions on contract damages and affirm the district court's award

of attorneys' fees under Massachusetts General Laws, Chapter 93A. All parties will bear their own costs.